# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK AGNES, | ) 1:10cv00807 LJO DLB PC<br>)<br>) |
| Plaintiff, | ) FINDINGS AND RECOMMENDATIONS<br>) REGARDING DEFENDANT'S MOTION |
| vs. | ) FOR SUMMARY JUDGMENT<br>) |
| JOSEPH, et al., | ) (Document 44)<br>) |
| Defendants. | ) |

Plaintiff Mark Agnes ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on May 10, 2010. On April 28, 2011, the Court issued an order finding cognizable Eighth Amendment claims against Defendants Nurse Joseph and Nurse Dixon. On May 23, 2011, the Court dismissed the remaining Defendants and non-cognizable claims. Defendant Dixon was ultimately dismissed without prejudice on December 7, 2012, after numerous failed attempts to locate her for service.

On September 13, 2012, Defendant Joseph filed this motion for summary judgment.[1]

---

[1] In Defendant's September 13, 2012, notice, filed concurrently with their motion for summary judgment, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment. Klingele v. Eikenberry, 849 F.2d 409, 411-412 (9th Cir. 1988).

1

Plaintiff filed an opposition on September 24, 2012, and Defendant filed a reply on October 1, 2012.

On October 11, 2012, Plaintiff filed a "reply" to Defendant's reply, stating that he did not understand the requirements for opposing summary judgment and providing additional argument and exhibits. Sur-replies are not permitted without leave of Court, and the Court notes that the September 13, 2012, notice from Defendant set forth, in detail, the requirements for opposing a motion for summary judgment. Nonetheless, because Plaintiff is proceeding pro se and to ensure that he has had sufficient opportunity to be heard, the Court will review the pleading.

I. **LEGAL STANDARD**

Summary judgment is appropriate when it is demonstrated that there exists no genuine dispute as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. at 324. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule

56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586, n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2002); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting former Rule 56(e) advisory committee's note on 1963 amendments).

In resolving a motion for summary judgment, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the

court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)).

Finally, to demonstrate a genuine dispute, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87 (citations omitted).

## II.  UNDISPUTED FACTS[2]

Plaintiff is in the custody of the California Department of Corrections and Rehabilitation and was housed at Wasco State Prison from January to June 2010. Def.'s Ex. S.

Defendant Joseph is a Registered Nurse employed at Wasco State Prison. Def.'s Ex. A, Joseph Decl. ¶ 1. She is responsible for referring inmates to their primary care physician if further examination and/or treatment is medically indicated. The scheduling of appointments is done by office technicians, and Defendant Joseph has no control over the primary care physician and whether or not they see the inmate. She is not responsible for ensuring that the inmate's chart is available and provided to the primary care physician when the physician examines the inmate. Joseph Decl. ¶ 4.

Defendant Johnson was one of the prison medical staff who saw Plaintiff for complaints of sciatica and following an alleged seizure. Johnson Decl. ¶¶ 9, 12. Sciatica is a symptom of another medical problem, such as chronic back pain, and treatment is typically conservative. Johnson Decl. ¶ 8. Conservative treatment is best in many cases of sciatica, and includes the use of over-the-counter pain medications such as Motrin or Tylenol. Johnson Decl. ¶ 8.

---

[2] These undisputed facts are compiled after a review of Defendant's statement of undisputed facts, Plaintiff's verified complaint and Plaintiff's September 24, 2012, and October 11, 2012, filings. A verified complaint in a pro se civil rights action may constitute an opposing affidavit for purposes of the summary judgment rule, where the complaint is based on an inmate's personal knowledge of admissible evidence, and not merely on the inmate's belief. McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curium); Lew v. Kona Hospital, 754 F.2d 1420, 1423 (9th Cir. 1985); F.R.C.P. 56(e).

4

On or about February 11, 2010, Defendant Johnson saw Plaintiff in response to his complaint that he was not getting Motrin and Tylenol for his sciatica. She referred him to the medical line to be seen by his primary care physician, Dr. K. Aye, after Dr. Aye told her that he wanted to see Plaintiff before renewing his prescriptions. Johnson Decl. ¶ 10; Def.'s Ex. B.

On February 14 and 18, 2010, Plaintiff submitted additional Health Services Request Forms. The first request related to denture adhesive. In the second request, Plaintiff indicated that he was out of pain pills for his sciatic nerve pain and was in tremendous pain. Johnson Decl. ¶ 10; Def.'s Ex. C.

Plaintiff was seen by Dr. Aye on February 19, 2010, for his seizure disorder and chronic low back pain. Dr. Aye restarted Plaintiff's Neurontin prescription for both his seizure disorder and low back pain, and ordered a follow-up in 30 days. Johnson Decl. ¶ 11; Def.'s Ex. D.

On February 24, 2010, Plaintiff saw Defendant Joseph in response to his complaint that he had a mild seizure. Plaintiff told Defendant Johnson that he did not report his seizure to the correctional officer on duty. Her examination revealed that Plaintiff was ambulatory with a normal gait. His vitals were normal, speech was normal, he was coherent, his lungs sounded normal and there was no throat congestion. Nevertheless, Defendant referred Plaintiff to the medical line for further evaluation. Johnson Decl. ¶ 12; Def.'s Ex. E.

On or about March 16, 2010, Plaintiff was temporarily housed at North Kern State Prison due to a court appearance. While there, orders were issued to renew and refill his various medications, including Neurontin, Motrin and Tylenol. Johnson Decl. ¶ 13; Def.'s Ex. F. Plaintiff refused to take his medication while he was at North Kern State Prison. Johnson Decl. ¶ 14; Def.'s Ex. G.

On March 18, 2010, when Plaintiff returned to Wasco State Prison, orders were issued for him to visit the medical line within 14 days for a follow-up on his seizures and back pain. Johnson Decl. ¶ 15; Def.'s Ex. H.

On March 20, 2010, Defendant Johnson saw Plaintiff in response to his complaint that he had not received any medications. Plaintiff also wanted to see Dr. Aye to discuss his medical problems and get his medication changed. Defendant Johnson believed that Plaintiff was receiving his medication because she usually checks the inmate's medication reconciliation chart. The medical note stated that Plaintiff was on his meds. She discussed Plaintiff's Motrin prescription with Dr. Aye, who stated that he wanted to see Plaintiff before changing the prescription. Defendant Johnson noted that Plaintiff was already scheduled to visit the medical line on March 29, 2010. Johnson Decl. ¶ 16; Def.'s Ex. I.

On March 21 and 25, 2010, Plaintiff submitted several Health Care Request Forms stating that he needed to see a doctor because he had had a mild seizure and his leg hurt. Defendant Johnson noted that Plaintiff was already scheduled to be seen at the medical line, and that if Plaintiff had suffered a seizure, correctional staff would have activated their personal alarms and/or called the medical department by phone. She did not recall any alarms or calls during this period. Moreover, every time she saw Plaintiff, his condition was stable and remained unchanged. Johnson Decl. ¶ 17; Def.'s Ex. J.

Plaintiff was seen in the medical line on March 25, 2010. His Motrin prescription was cancelled. Defendant Johnson is not responsible for cancelling medications. The Physician's Order indicated that Plaintiff was to attend the medical line in 14 to 30 days for follow-up. Johnson Decl. ¶ 18, Def.'s Ex. K.

On March 30, 2010, Defendant Johnson saw Plaintiff in response to his complaint that he was unable to see a doctor on March 29, 2010, because his chart was missing. Plaintiff also complained that he had a mild seizure and that his leg hurt. On examination, Defendant Johnson found that Plaintiff's vitals were normal. No seizure activity had been noticed by correctional staff and/or reported to the medical department. She therefore told Plaintiff that he was

scheduled to be seen in the medical line on April 2, 2010. Defendant Johnson does not recall whether Plaintiff's chart was missing. Johnson Decl. ¶¶ 19, 20; Def.'s Ex. L.

On April 3, 2010, Defendant Johnson examined Plaintiff at the medical line in response to his complaints of hip and/or leg pain. The examination revealed that his vitals were normal, he had full range of motion in the lower left extremity, and his gait and stance were normal. Nevertheless, she recommended reduced activity and ibuprofen for pain. Johnson Decl. ¶ 21; Def.'s Ex. M.

On April 7, and 8, 2010, Plaintiff submitted additional Health Services Request Forms in which he complained that he had not yet been examined by a doctor for his leg pain. Defendant Johnson noted that she had not seen any changes in Plaintiff's condition since the last time she examined him and that he was already scheduled to be seen in the medical line on April 8, 2010. Johnson Decl. ¶ 22; Def.'s Ex. N.

On April 8, 2010, Plaintiff was examined by Dr. Aye. The examination revealed that Plaintiff's vitals were normal, there was no weakness in the lumbar region, he had no bowel, bladder or control issues, there were no spinal deformities, his alleged seizures were not witnessed, and he was already taking Neurontin. Dr. Aye recommended that Plaintiff use Motrin only as needed, ordered a blood test and scheduled a follow-up in 30 days. Plaintiff was also told not to refuse blood draws, as he had done previously. Johnson Decl. ¶ 23; Def.'s Ex. O.

Defendant Johnson never intended that Plaintiff suffer any undue or unnecessary pain, and her intentions throughout were to ensure that Plaintiff promptly received treatment that was medically necessary and appropriate for his conditions. Johnson Decl. ¶ 24.

During his deposition, Plaintiff testified that Defendant Johnson was "sympathetic to a certain degree," but that her "hands are tied" because the doctor makes the ultimate decisions. Def.'s Ex. U, Pl.'s Dep. 29:25-30:14.

### III. ANALYSIS

#### A. Plaintiff's Request for Discovery

In his September 24, 2012, opposition, Plaintiff states that he suffered two mild seizures. He contends that the seizures were documented in the Unit Log Book and he asks that the Court subpoena the records. To the extent that this can be construed as a Rule 56(d) motion, the Court notes that discovery closed on July 4, 2012, prior to the filing of Defendant's summary judgment motion. Plaintiff did not move to modify the scheduling order and he presents no explanation as to why he did not seek this information during the discovery period. Moreover, as explained below, the outcome would not be different even if Plaintiff had two mild seizures. Plaintiff's request is therefore denied.

#### B. Eighth Amendment Claim

To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must show deliberate indifference to his serious medical needs. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)) (quotation marks omitted). The two-part test for deliberate indifference requires the plaintiff to show (1) a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain, and (2) the defendant's response to the need was deliberately indifferent. Jett, 439 F.3d at 1096 (quotation marks and citation omitted).

Deliberate indifference is shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference. Id. (citation and quotation marks omitted). Deliberate indifference may be manifested when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care. Id. (citation and quotations omitted). Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order

for the prisoner to make a claim of deliberate indifference to serious medical needs. Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled on other grounds*, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

Plaintiff alleges in his complaint that Defendant Johnson was deliberately indifferent to his medical needs because she denied him access to a doctor after he complained of sciatica pain and mild seizures. The undisputed facts demonstrate, however, that Plaintiff was receiving almost constant medical attention from Defendant Johnson. Defendant Johnson saw Plaintiff on February 11, 2010, and referred him to the medical line to see his doctor. Plaintiff saw Dr. Aye eight days later, on February 19, 2010. His examination was normal and Dr. Aye restarted Neurontin. Five days later, Plaintiff complained of a mild seizure, though he told Defendant Johnson that he did not report the seizure to correctional guards. Defendant Johnson examined him on February 25, 2011, and his examination was normal. She referred Plaintiff to the medical line.

On March 18, 2010, upon his return to Wasco State Prison, orders were issued for Plaintiff to visit the medical line within 14 days for follow-up. Defendant Johnson saw Plaintiff two days later, on March 20, 2010, after he complained that he was not receiving his medication and wanted to see Dr. Aye to have his medications changed. Defendant Johnson determined that

Plaintiff was on his medications and noted that he was scheduled to be seen in the medical line on March 29, 2010.

Plaintiff was seen by Nurse Garcia in the medical line on March 25, 2010, for complaints of leg pain and a mild seizure. His Motrin was cancelled and he was ordered to follow-up in 14-30 days.

Plaintiff saw Defendant Johnson five days later, on March 30, 2010, in response to his complaint that he could not see the doctor on March 29, 2010, because his chart was missing. His vital signs were normal and she noted that no seizure activity was reported by staff. She told Plaintiff that he was scheduled to be seen in the medical line on April 2, 2010.

Plaintiff saw Defendant Johnson again on April 3, 2010, for complaints of hip and/or leg pain. His vitals and examination were normal. Although Plaintiff submitted additional Health Care Request Forms on April 7 and 8, 2010, for complaints of leg pain, Defendant Joseph noted that she had not seen any changes in her examinations and that he was scheduled to be seen in the medical line on April 8, 2010.

When Plaintiff saw Dr. Aye on April 8, 2010, his examination was normal. Plaintiff was already taking Neurontin for pain and seizures, and his alleged seizures were not witnessed. Dr. Aye ordered blood tests and told Plaintiff to return in 30 days.

The treatment history demonstrates, without question, that Defendant Joseph was not deliberately indifferent to Plaintiff's serious medical needs. Every time she saw him, his examination was normal and there was no evidence of seizure activity. Moreover, she either referred Plaintiff to the medical line or told him that he was already scheduled to be seen. Indeed, when Plaintiff ultimately saw Dr. Aye on April 8, 2010, his examination was normal and no additional treatment was prescribed.

While Plaintiff contends that Defendant Johnson could have done more to ensure that he saw a doctor in a timely manner, this is not the standard by which an Eighth Amendment

violation is measured.  Regardless of whether Plaintiff thinks that Defendant Johnson *should have* acted with more urgency, Defendant Johnson was presented with no medical reasons to do so.  Her examinations were normal and Plaintiff was receiving near constant medical attention.  Plaintiff does not dispute the findings in the medical records, but simply argues that Defendant "did not do her best" to make sure that Plaintiff was seen by Dr. Aye.  Pl.'s Reply 3.   That he may have had to wait longer than he would have liked to see Dr. Aye certainly does not demonstrate deliberate indifference by Defendant Johnson under these facts.  Again, during the time he was waiting, he was examined numerous times and his normal examinations did not warrant immediate treatment.  "A difference of opinion between a physician and the prisoner - or between medical professionals - concerning what medical care is appropriate does not amount to deliberate indifference."  Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012) (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)); Wilhelm v. Rotman, 680 F.3d 1113, 1122-23 (9th Cir. 2012) (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)).

     To the extent that Plaintiff alleges that Defendant Johnson was deliberately indifferent because she did not locate his medical records, or did not create temporary records, his argument fails.  Defendant Johnson was not responsible for locating records prior to physician appointments, but more importantly, there was no medical indication that Plaintiff needed immediate medical attention.  Moreover, even assuming that Plaintiff had two mild seizures and Defendant erred, a finding which is not supported by the record, an Eighth Amendment claim may not be premised on even gross negligence by a physician.  Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

     C.     Qualified Immunity

     Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In ruling upon the issue of

qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). If, and only if, a violation can be made out, the next step is to ask whether the right was clearly established. Id. In resolving these issues, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

The undisputed facts show that Defendant Johnson did not violate any of Plaintiff's constitutional right. Even if she had, Defendant Johnson could reasonably believe that the treatment she provided was lawful in light of her consistent examination findings and her referrals for follow-up care. Defendant Johnson is therefore entitled to qualified immunity.

## IV.    **FINDINGS AND RECOMMENDATIONS**

Based on the above, the Court HEREBY RECOMMENDS that Defendant's motion for summary judgment, filed on September 13, 2012, be GRANTED, concluding this action in its entirety.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    **March 11, 2013**                             /s/ Dennis L. Beck
                                                         UNITED STATES MAGISTRATE JUDGE